UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:96-cr-40034 |
| ) | |
| STACY M. HAYNES, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is currently before the Court on remand of the Court's prior Order denying Defendant Stacy M. Haynes's requests for compassionate release. (Dkts. 151, 152, 159). This issue has been fully briefed and is thus ripe for review.

### BACKGROUND

In 1998, Defendant was convicted of three counts of robbery under the Hobbs Act, 18 U.S.C. § 1951; three counts of interstate travel in aid of racketeering activity in violation of 18 U.S.C. § 1952; and six counts of using or carrying a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). He is currently serving a 1-day sentence for the Hobbs Act and § 1952 convictions, consecutive to a 105-year sentence for the § 924(c) convictions. The 105-year sentence was mandated by statute, which at the time of Defendant's sentencing required 5 years' incarceration for the first conviction under § 924(c) and enhanced 20-year consecutive terms of incarceration for each additional § 924(c) conviction. (Dkt. 136).

In September 2020, Defendant moved for compassionate release. (Dkt. 152). He argued he would not be subject to the 20-year[1] enhancement because, under the current version of the statute, it applies only to violations which occur "after a prior conviction under [§ 924(c)] has become final." § 924(c)(1)(C)(i). Accordingly, the statutory penalty for his six simultaneous § 924(c) convictions would be 30 years'—not 105 years'—incarceration. Defendant also argued his three convictions under § 1952 are legally invalid, rendering the accompanying three § 924(c) convictions invalid as well. If he is correct, the current statutory penalty for his § 924(c) convictions would be only 15 years, mandatorily consecutive to his 1-day sentence for the Hobbs Act convictions. As Defendant has reportedly served approximately 25 years' incarceration, he sought immediate release.[2] (Dkt. 152 at 23–24). This landscape formed the basis for Defendant's request for compassionate release; specifically, he argued the vast discrepancy between the sentence he received and the one he would receive if sentenced under today's statutory framework coupled with his argument six of his convictions are legally invalid constitute "extraordinary and compelling reasons" warranting compassionate release.

In November 2020, the Court denied Defendant's request for compassionate release, concluding it lacked the discretion to deem Defendant's proffered reasons for release "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A)(i) and the

---

[1] The enhancement is now 25 years' incarceration. § 924(c)(1)(C)(i).
[2] Defendant also argued his guideline range for the three Hobbs Act robberies and three § 924(c) convictions would be 272–295 months' incarceration, meaning he has already served a sentence at the top of the guideline range for the convictions he does not dispute. (Dkt. 152 at 23).

relevant policy statement, U.S.S.G. § 1B1.13. (Dkt. 159). The Seventh Circuit vacated the Court's decision and remanded this matter back to the Court for consideration in light of *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020).

## LEGAL STANDARD

The First Step Act amended § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239.[3] The decision whether to grant compassionate release is a matter within a district judge's discretion, the standard for which is set by § 3582(c)(1)(A). *Gunn*, 980 F.3d at 1180–81. Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A); *see also United States v. Sanford*, ___ F.3d ___, No. 20-2445, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021) (holding the exhaustion requirement, though not a jurisdictional prerequisite, is a mandatory claims-processing rule). Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which the defendant is currently imprisoned, § 3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons" consistent with any applicable policy statement warrant compassionate release, §

---

[3] Prior to the enactment of the First Step Act, such motions could only be brought on a defendant's behalf by the Director of the Bureau of Prisons (BOP).

3582(c)(1)(A)(i). Third, the Court must look to "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

## DISCUSSION

The basis for Defendant's request for compassionate release remains unchanged. First, he argues six of his convictions—the three § 1952 convictions and three accompanying § 924(c) convictions—are legally invalid due to a charging error in the Indictment. Second, he invokes the First Step Act amendment abolishing the sentence-stacking provision responsible for his mandatory 105-year sentence for his § 924(c) convictions; according to Defendant, he would have faced a mandatory minimum of just 15 years for the § 924(c) convictions if properly charged and convicted today.[4] The combination of these factors, he argues, constitute extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). The Government opposes his request, arguing a change in sentencing law cannot predicate a motion for compassionate release.[5]

A.  *Defendant Presents a Cognizable Claim for Compassionate Release*

The Government first argues Defendant's request is based on the "mistaken premise[ ] that compassionate release has now entirely supplanted all other well-established avenues, including habeas corpus and the appellate process" and claims his request is actually an unauthorized successive motion under 28 U.S.C. § 2255. (Dkt. 167 at 8–13). To be sure, the mechanisms in § 3582(c)(1)(A) are not a substitute

---

[4] This 15-year minimum would remain mandatorily consecutive to his sentence for the three Hobbs Act convictions he does not contest.
[5] The Government also argues Defendant's request is untimely but fails to develop this argument or cite to any authority for the proposition. (Dkt. 167 at 14).

4

for habeas corpus or the appellate process. *See United States v. Arojojoye*, 806 F. App'x 475, 478 (7th Cir. 2020) ("[A]ny post-judgment motion in a criminal proceeding that fits the description of a motion to vacate, set aside, or correct a sentence set forth in the first paragraph of section 2255 should be treated as a section 2255 motion."). It is therefore important to consider whether arguments advanced in support of a § 3582(c)(1)(A) motion should have been made in earlier or different proceedings.

At times, the line between claims properly brought under § 3582(c)(1)(A) versus those that belong in a § 2255 motion can be blurred. "In general, a motion is properly construed as a successive habeas petition where it seeks to collaterally attack a previously imposed sentence on grounds similar to those outlined in § 2255, *e.g.* that it was in some way wrongly imposed." *United States v. Adams*, No. 3:04-CR-30029, 2020 WL 3639903, at *3 (S.D. Ill. July 6, 2020) (citing *United States v. Carraway*, 478 F.3d 845, 848-49 (7th Cir. 2007)). Defendant's arguments for compassionate release help to clarify this line.

On one side of the line is Defendant's argument he is actually innocent of the three § 1952 convictions and thus the three accompanying § 924(c) convictions; this argument challenges the legality of those convictions and is therefore properly construed as a request under § 2255 rather than § 3582(c)(1)(A). *See Arojojoye*, 806 F. App'x at 477–78 (holding an argument the sentencing court violated the principle that like crimes be punished similarly was not cognizable under § 3582(c)(1)(A) but rather was an impermissible successive motion § 2255). Under *Arojojoye*, the Court cannot consider this argument as grounds for relief under § 3582(c)(1)(A).

On the other side of the line, however, is his argument he is entitled to relief because of the disparity between the pre- and post-First Step Act mandatory sentences for his § 924(c) convictions. This argument does not test the legality of his convictions or sentence—Defendant simply seeks relief because the disparity is unquestionably great. Because this argument does not test the legality or validity of Defendant's sentence, it not cognizable under § 2255 and thus cannot be construed as such a request.

The next question is whether drastic changes in sentencing laws may predicate a motion under § 3582(c)(1)(A). The Government primarily rests its opposition on its reading of the United States Sentencing Commission's policy statement on compassionate release. The policy statement itself merely restates § 3582(c)(1)(A) in its pre-First Step Act form. U.S.S.G. § 1B1.13. Guidance on what, specifically, constitutes "extraordinary and compelling reasons" is contained in the Application Note to § 1B1.13, which enumerates three specific circumstances that qualify as extraordinary and compelling: (A) diagnosis of a terminal illness or serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) "death or incapacitation of the caregiver of the defendant's minor child" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Subsection (D) adds a catchall

6

provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." § 1B1.13, Application Note 1(D).

Due to a woefully unfortunate set of circumstances,[6] the policy statement has not been amended to account for the changes made by the First Step Act, which largely strip the Director of BOP of its gatekeeping function.[7] The incongruence between § 3582(c)(1)(A) in its current form and the outdated policy statement has created a deep divide among district courts inundated with requests for compassionate release in the wake of the COVID-19 pandemic, the cause for the divide being differing opinions on the validity and applicability of the unchanged policy statement, which maintains the Director's gatekeeping function.

In *Gunn*, the Seventh Circuit provided some clarity. It concluded "the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release" because the opening clause of § 1B1.13 limited its applicability to motions for compassionate release filed by the Director of BOP. *Gunn*, 980 F.3d at 1180–81. However, the Seventh Circuit did not rule § 1B1.13 wholly irrelevant.

> The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a

---

[6] Due to the executive branch's failure to nominate individuals to fill vacancies on the Sentencing Commission, the Commission has lacked a quorum since 2018 and has therefore been unable to act.

[7] While Congress did not strip the Director's role in the compassionate release realm entirely, the amendment is a major shift from the prior regime, which required the Director's acquiescence and action prior to any such motion reaching a court.

7

> different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive.

*Id*. The Seventh Circuit also directed substantial weight be given to the Director's determination of extraordinary and compelling circumstances where it chooses to provide one. *Id*.

The Court's task today is to consider Defendant's request in light of *Gunn*, as the Seventh Circuit has deemed it dispositive in this case. *United States v. Haynes*, No. 20-3241, Dkt. 8 (7th Cir. Dec. 18, 2020). The Government essentially argues *Gunn* mandates adherence to U.S.S.G. § 1B1.13 lest a district court be reversed for an abuse of discretion. (Dkt. 167 at 8–11). This interpretation is inaccurate; though § 1B1.13 can provide helpful guidance on such motions, particularly because Congress specifically tasked the Sentencing Commission with defining "extraordinary and compelling reasons," *see* 28 U.S.C. § 994(t), *Gunn* explicitly held § 1B1.13 is not presently binding on prisoner-initiated applications for compassionate release.

Additionally, a finding that statutory amendments which significantly alter a defendant's sentencing package can predicate a motion for compassionate release is not inconsistent with § 1B1.13. The policy statement contains a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13, Application Note 1(D). Use of the phrase "other than" clearly indicates the Sentencing Commission's intent that the catchall provision be flexible and able to include reasons not explicitly enumerated in the policy statement. *Contra United States v. Welker*, No. 13-CR-10061, 2020 WL 7091540, at *4 (C.D. Ill. Dec. 4, 2020) (finding relief under §

3582(c)(1)(A) unavailable in part because sentencing disparities are dissimilar to the enumerated reasons in the policy statement). Even if the Court's discretion were bound by the policy statement (it is not), nothing in the policy statement would foreclose finding an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(1)(A)(i) where an individual would be subject to a radically lower mandatory minimum sentence under present-day sentencing provisions.

The legislative history of the compassionate release statute also demonstrates Congress envisioned the mechanism being used to reduce sentences where subsequent revisions to sentencing policies render an imposed sentence unreasonably lengthy.

> THE COMMITTEE [ON THE JUDICIARY] BELIEVES THAT THERE MAY BE UNUSUAL CASES IN WHICH AN EVENTUAL REDUCTION IN THE LENGTH OF A TERM OF IMPRISONMENT IS JUSTIFIED BY CHANGED CIRCUMSTANCES. THESE WOULD INCLUDE CASES OF SEVERE ILLNESS, CASES IN WHICH OTHER EXTRAORDINARY AND COMPELLING CIRCUMSTANCES JUSTIFY A REDUCTION OF AN UNUSUALLY LONG SENTENCE, AND *SOME CASES IN WHICH THE SENTENCING GUIDELINES FOR THE OFFENSE OF WHICH THE DEFENDER WAS CONVICTED HAVE BEEN LATER AMENDED TO PROVIDE A SHORTER TERM OF IMPRISONMENT.*

S. REP. 98-225, 55-56, 1984 U.S.C.C.A.N. 3182, 3238-39 (emphasis added).[8] Indeed, from its inception, § 3582(c)(1)(A) was considered a safety valve, permitting relief where there might otherwise be no available avenue. *See* S. REP. 98-225, 121, 1984

---

[8] Admittedly, the language about changes in sentencing guidelines was likely in relation to § 3582(c)(2) rather than § 3582(c)(1)(A)(i). The sentiment is nevertheless the same. Moreover, when § 3582 was enacted, the guidelines were mandatory, so the concentration on changes to the guidelines rather than statutory schemes made sense at the time.

U.S.C.C.A.N. 3182, 3304 ("THE VALUE OF THE FORMS OF 'SAFETY VALVES' CONTAINED IN THIS SUBSECTION LIES IN THE FACT THAT THEY ASSURE THE AVAILABILITY OF SPECIFIC REVIEW AND REDUCTION OF A TERM OF IMPRISONMENT FOR 'EXTRAORDINARY AND COMPELLING REASONS' AND TO RESPOND TO CHANGES IN THE GUIDELINES."); *United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020) ("[T]he very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." (citation omitted)).

Perhaps the most compelling argument against Defendant's position is the fact Congress did not make the First Step Act anti-stacking amendment retroactive, while expressly making other provisions of the First Step Act retroactive. This is persuasive evidence Congress did not intend § 403 of the First Step Act, the anti-stacking amendment, to be the basis for relief to those who have already been sentenced, a conclusion which comports with long-standing jurisprudence for ascertainment of Congressional intent. *E.g.*, *United States v. Godinez*, 955 F.3d 651, 656 (7th Cir. 2020) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))). Indeed, this principle led, at least in part, my district court colleagues including Judge Moody and Judge Mihm to reject the notion that "the sentencing disparities created by § 403 amount[ ] to an extraordinary

and compelling reason justifying compassionate release," *United States v. Scott*, 22 WL 7417963 (N.D. Ind. 2020). *See also Welker*, 2020 WL 7091540, at *4 ("Because Congress has indicated that the relevant statute is not retroactive and because the previous compassionate relief guidelines focus on individualized health and family circumstances, this Court is unable to conclude that Defendant has presented an "extraordinary and compelling" reason to qualify him for compassionate release."); *United States v. Goetz*, No. 98 CR 00123, 2020 WL 5423920, at *4 (S.D. Ind. Sept. 10, 2020) (denying compassionate release on the basis that the defendant "may not use 18 U.S.C. § 3582(c)(1)(A)(i)'s 'extraordinary and compelling' provision as an end-around to achieve a result that Congress did not intend.").

However, even this compelling argument fails to conclusively carry the Government's position. Clearly, Congress did not intend for "automatic vacatur and resentencing" for all individuals like Defendant. But the question here is not whether Congress intended § 403 of the First Step Act to be a basis for sentence reductions generally; rather, the question is whether sentencing disparities caused by § 403 may constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i). If so, then courts may consider individual defendants' circumstances and weigh whether a particular sentencing disparity is truly "extraordinary and compelling" on a case-by-case basis; if not, then a sentencing disparity may not form the basis for § 3582(c)(1)(A)(i) relief, no matter how extreme. A growing majority of cases have held the former. *E.g.*, *McCoy*, 981 F.3d at 286 ("The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may

not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)."); *United States v. Williams*, No. 06 CR 50055-(1), 2020 WL 6940788, at *3 (N.D. Ill. Nov. 25, 2020) ("[T]he Court . . . concludes that Congress' decision not to make the changes to § 924(c)'s stacking provisions retroactive simply establishes that a defendant sentenced before the FSA is not *automatically* entitled to resentencing; it does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A)." (internal quotation marks omitted and emphasis in original)).

Congress does not act in a vacuum. It drafted the First Step Act aware of the safety valve function of § 3582(c) and against the backdrop of the Sentencing Commission's interpretation of "extraordinary and compelling reasons," which is quite broad due to the catchall category. It is not far-fetched to believe Congress at some point in its deliberations contemplated that a truly extreme difference between an individual's mandatory sentence pre- and post-First Step Act could be considered a basis for individualized relief under § 3582(c)(1)(A)(i), particularly in light of the segment of legislative commentary previously cited. Moreover, nothing in either § 3582(c)(1)(A) or U.S.S.G. § 1B1.13 expressly prohibits such a finding. This severely weakens the effect of the *Expressio Unius Est Exclusio Alterius* Doctrine in this particular context.

Furthermore, the Seventh Circuit's instructions on remand are implicit indication sentencing disparities such as Defendant's can predicate a motion under §

3582(c)(1)(A)(i). Previously, the Court held it lacked the discretion to consider whether the disparity at issue constituted an extraordinary and compelling reason for relief consistent with U.S.S.G. § 1B1.13, Application Note 1(D). (Dkt. 159). The Seventh Circuit disagreed and remanded this case for consideration of whether Defendant's sentencing disparity is an extraordinary and compelling reason for relief in light of *Gunn's* holding that district courts are not bound by § 1B1.13 in deciding whether proffered reasons are sufficiently extraordinary and compelling to warrant relief under § 3582(c)(1)(A)(i). Had the Seventh Circuit believed sentencing disparities such as Defendant's are—as a matter of law—categorically improper predicates for motions under § 3582(c)(1)(A)(i), reversal and remand would have been an odd choice. And a decision by this Court making such a finding in this context would be odder still.

For these reasons, the undersigned joins the growing faction of courts holding "the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)."[9] *McCoy*, 981 F.3d at 285; *Williams*, 2020 WL 6940788, at *3 (gathering cases). That said, holding a severe sentencing disparity *can* constitute an "extraordinary and compelling" reason is not the same as holding it *will*. Compassionate release inquiries are highly individual and case-specific, and the undersigned stresses that relief under §

---

[9] The undersigned recognizes this is a reversal of his previous opinion in this matter (dkt. 148). Further consideration and recent developments in the interpretation of § 3582(c)(1)(A)(i) have led the undersigned to believe this is the correct outcome.

13

3582(c)(1)(A)(i) will be reserved only for such disparities that can be truly described as an extraordinary and compelling reason for relief. While the Court declines to draw bright lines at this time, the Court must emphasize that relief in this context is available only in the most extreme of cases; there will be times when disparities that could be described as "unfair" will nevertheless fail to rise to the level of "extraordinary and compelling." The Court is also hesitant to interfere with a sentencing judge's discretion in imposing an initial sentence and intends to reserve relief for cases where a previously mandatory sentence meant the sentencing judge's hands were tied. Today's decision is not an invitation to open the floodgates to § 3582(c)(1)(A)(i) motions based on nonretroactive changes to sentencing statutes.

Defendant's case meets this high standard. The amendment in § 403 of the First Step Act reduces the mandatory minimum for Defendant's § 924(c) convictions from 105 years' to 30 years' incarceration, a remarkable difference of 75 years. As if the massive disparity were not enough to be deemed "extraordinary and compelling," the sheer length of Defendant's current 105-year sentence is noteworthy. The national average sentence for murder in fiscal year 2019 was approximately 21 years' incarceration. *Statistical Information Packet Fiscal Year 2019 Seventh Circuit*, U.S. Sentencing Comm'n, Table 7 (Apr. 2020), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2019/7c19.pdf. While Defendant's multiple armed robbery crimes were undeniably serious, the Court doubts any reasonable person would suggest they are deserving of a sentence 5 times the length of the

14

average sentence for murder. Defendant's case is one illustrating how severe sentencing mandates can create outcomes wholly divorced from our notions of justice.

B.  *A Sentence Reduction is Appropriate*

Were Defendant to be sentenced today, he would be subject to a guideline range of 110–137 months' imprisonment on the Hobbs Act and § 1952 convictions, to be followed by 6 consecutive "term[s] of imprisonment of not less than 5 years" for his § 924(c) convictions. (*See* dkt. 129). He is currently serving concurrent 1-day sentences for his Hobbs Act and § 1952 convictions and a previously mandatory 105-year consecutive sentence for his § 924(c) convictions. (Dkt. 136).[10]

As the reason for relief under § 3582(c)(1)(A) is the disparity between the pre- and post-First Step Act mandatory minimum sentences for § 924(c) convictions, the Court believes the appropriate remedy here is to bring Defendant's sentences for his § 924(c) convictions into line with the current penalty. As such, the Court finds the § 3553(a) factors to be less relevant than they would be if the question was whether immediate release is appropriate regardless of the applicable sentencing package; Congress has determined the appropriate sentence for § 924(c) convictions, and the Court accepts that determination.

Nevertheless, the Court concludes the goals of sentencing, considerations for which are set forth in § 3553(a), are served by reducing Defendant's sentence for his

---

[10] Defendant was originally mandatorily sentenced to life imprisonment for the Hobbs Act and § 1952 convictions under 18 U.S.C. § 3559(C)(1)(A)(i). Defendant's life sentence was vacated the wake of *Johnson v. United States*, 576 U.S. 591 (2015), and the Court reduced that sentence to concurrent 1-day sentences for each Hobbs Act and § 1952 conviction.

§ 924(c) convictions to the mandatory minimum 5-year consecutive terms of imprisonment on each of the six convictions, bringing the total sentence for the § 924(c) convictions to 30 years' incarceration. Considering the total sentence, the Court continues to believe the 1-day sentence currently imposed for the Hobbs Act and § 1952 convictions when coupled with the 30-year sentence for the § 924(c) convictions constitutes a sentence sufficient but not more than necessary to serve the goals of sentencing. *See Dean v. United States*, 137 S. Ct. 1170, 1178 (2017) ("Nothing . . . prevents a sentencing court from considering a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense."). Defendant's crimes were inarguably serious and deserving of harsh punishment, and his record in prison is less than exemplary—no one argues otherwise. A 30-year and 1-day sentence, which remains harsher than the average sentence for murder, provides just punishment and adequate deterrence. The Court strongly encourages Defendant to use his remaining time in prison wisely, refraining from bad conduct and engaging in available resources designed to facilitate the transition from prison to civilian life.

Though today's decision certainly provides Defendant relief, the Court continues to be disturbed by his assertions he is actually innocent of his § 1952 convictions and therefore three of his § 924(c) convictions. Unfortunately, the Court is not aware of a mechanism through which Defendant can properly present these arguments to a court at this stage of the proceedings. More troubling, the Government has yet to make any argument refuting Defendant's position despite having at least

three opportunities to do so, instead expressing frustration at the fact Defendant has continually contested what he claims to be a charging error in the Indictment that renders six of his convictions legally invalid. (*See* dkt. 167). While the Court certainly does not condone abusing the justice system by way of continual frivolous proceedings, one can hardly blame Defendant for seeking a substantive decision on his nonfrivolous claim, which if meritorious, would likely result in an even more significant sentence reduction. As stated in the Court's prior Order, the United States Attorney has considerable discretion to correct errors such as the one alleged here by moving to vacate certain convictions.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's requests for relief under § 3582(c)(1)(A)(i) (dkts. 151, 152) are GRANTED; Defendant's sentences on Counts 4, 6, 9, 11, and 13 are REDUCED to 5-year terms of imprisonment, to be served consecutive to Defendant's concurrent 1-day sentences on Counts 1, 3, 5, 8, 10, and 12 and his consecutive 5-year sentence on Count 2; thus, his total term of imprisonment is 30 years' and 1 day. All other aspects of Defendant's sentence and supervised release remain in full effect.

SO ORDERED.

Entered this 4th day of February 2021.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
